(19 App. Div. 272.)

COCHRANE et al. v. KIP et al.

(Supreme Court, Appellate Division, First Department. June 18, 1897.)

WILLS—CONSTRUCTION—VESTED REMAINDERS.

The will of S., after making certain devises and bequests, left the residue of his property in trust to make certain dispositions of the income during the life of his daughter, and then provided that at her death, "to close this trust," the executors and trustees should convey and transfer the estate remaining in their hands to such of his grandchildren as should then be living, except his granddaughter F., naming seven such grandchildren, and gave, devised, and bequeathed the same to such seven grandchildren, but if any of said grandchildren should die previous to the death of his daughter, leaving issue him or her surviving, such issue should take the share to which the parent would have been entitled. By a codicil to this will, the testator directed that his granddaughter F. should be included in the division of his estate with his other grandchildren. Held that, by such will and codicil, vested remainders in the property were given to the eight grandchildren, but subject to be divested by the death of any grandchild, either with or without issue, during the life of the testator's daughter, the interest of such

grandchild vesting at his or her death either in the issue, if any, or, if there were none, in the other grandchildren. Ingraham and Rumsey, JJ., dissenting, and holding that the interest of each grandchild was divested only upon death leaving issue, but, upon death without issue, vested absolutely, and passed to the heirs and next of kin of such grandchild.

Appeal from special term.

Action by John W. Cochrane and others, executors and trustees of the will of Adam W. Spies, deceased, against Sarah Ann Kip and others. From a judgment entered on a decision of the court, Arthur C. Humbert, individually and as administrator of the estate of Florence Adele Humbert, deceased, appeals. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

Elihu Root, for appellant Arthur C. Humbert, individually and as administrator.

Geo. B. Adams, for defendant William Rudolph Kip, and guardian ad litem for infant defendant Garret Berg Kip.

Charles Steele, guardian ad litem for infant defendants French.

Frank L. Hall, for plaintiff executors and for defendant executors.

Henry C. White, for defendants Kip.

WILLIAMS, J.    The action was brought to procure the construction of the will and codicils of Adam W. Spies, and to determine the rights and interests of the parties in the property left by the testator. The questions involved in this action relate to the twelfth clause of the will and the fourth clause of the codicil. The will was executed in July, 1881, and the second codicil July, 1890. By the will, the testator made certain specific devises and bequests, and then gave all the residue of the property to the executors and trustees named in the will, in trust to make certain specific disposition of the income during the lifetime of his daughter Sarah Ann Kip, and then, by the twelfth clause, he provided as follows:

"At the death of my said daughter Sarah Ann, to close this trust, I direct that my executors and trustees convey and transfer all of my estate, both real and personal, then remaining in their hands, to such of my grandchildren as shall then be living (except my said granddaughter Sarah Ann French), viz. Arthur De Witt Cochrane, Cornelia Elizabeth Schell, Henry Spies Kip, Garret Berg Kip, William Rudolph Kip, and Florence Adele Kip, equally, share and share alike; and I hereby give, devise, and bequeath the same to such seven grandchildren, but if any of said seven grandchildren shall die previous to the decease of my daughter Sarah Ann, leaving issue him, her, or them surviving, then I direct that such issue shall take the share to which their parent would have been entitled hereunder (if living) under this clause of my will, said share to be received by said grandchildren or their descendants free from any control or claim of any husband that she or they may have at any time."

By the fourth clause of the second codicil he further provided as follows:

"Fourth. I hereby direct that my said granddaughter Sarah Ann French shall be included in the division of my estate as mentioned in the 12th clause of my said last will and testament, and shall share therein equally with my other seven grandchildren; I hereby directing that said 12th clause of said will shall apply to her and her heirs as though she had been originally named therein."

The testator died May 31, 1891, leaving, him surviving, his daughter Sarah Ann Kip, a widow, with four children, viz. Florence Adele Humbert, Henry Spies Kip, William Rudolph Kip, and Garret Berg Kip; also three grandchildren, the children of his deceased daughter Hilda M. S. Cochrane, viz. Sarah Ann French, Adam W. S. Cochrane, and Arthur De Witt Cochrane. Sarah Ann French, at the testator's death, had two children living, viz. Seth B. French and Hilda Cochrane French, and another child has been born to her since, viz. Ellen Mercer French. Testator also left, him surviving, another grandchild, the child of his deceased daughter Mary S. Barnes, viz. Cornelia Elizabeth Schell. These eight grandchildren were the persons named in the will and second codicil, and it will be observed that the eighth grandchild, Sarah Ann French, excepted in the twelfth clause of the will, but brought within its provision by the fourth clause of the second codicil, had at the time of the testator's death two children living, and one has been born since. The trial took place in October, 1896. The codicil was made in July, 1890. At the time of the trial, the children of the eighth daughter, Sarah Ann French, were seven years and five years and nine months of age, respectively. None of them had been born, therefore, when the will was made (1881), and only one of them when the codicil was made in 1890. A second one was born after the second codicil was made, and before the testator's death, and the third had been born since testator's death. The grandchild Florence Adele Humbert was married after the death of the testator, and died soon after, in October, 1895, intestate, leaving, her surviving, a husband, the appellant, but no children. The daughter of the testator, Sarah Ann Kip, and the other seven grandchildren, are still living.

The practical question involved in this action was whether the appellant, after the death of his wife, had any interest personally or as administrator of his wife's estate in the property disposed of by the twelfth clause of the will and the fourth clause of the second codicil. The parties seem to agree that the provisions of the will and codicil in question gave to the eight grandchildren vested remainders in the property. The only question is as to when and for what reason such remainders were divested and passed to other parties. The appellant claims such remainders were divested only by the death of the grandchild, leaving issue, before the death of Sarah Ann Kip; while the respondents claim that the remainders were divested by the death of the grandchild with or without issue before the death of Sarah Ann Kip. If there were issue, the interest went to the issue; if no issue, the interest went to the surviving grandchildren and their descendants. In this case there were no issue. The appellant claims, therefore, that the remainder never became divested, but at the death of his wife became vested absolutely, and the interest passed to her heirs and next of kin; while the respondents claim that the remainder became divested at the death of Mrs. Humbert, and passed to the seven surviving grandchildren and their descendants. It is not disputed that the testator might legally have disposed of the property in either way. The only question is what disposition he did make. It is a question of the construction of the

language used. If the real intention of the testator is apparent, effect should be given to such intention, without regard to technical rules or the use of particular words. It seems to us there can be no doubt as to what the testator's intention was. He commenced the twelfth clause of the will by the declaration that he desired to close the trust at the death of his daughter Sarah Ann Kip, and for that purpose he directed his executors and trustees to dispose of the residue of his property remaining in their hands at that time. How? By conveying and transferring it to such of his grandchildren as should then be living equally, share and share alike; and the only limitation of this direction is found after the word "but," a little further on in the clause, viz.:

"If any of the grandchildren shall die previous to the decease of my daughter Sarah Ann, leaving issue him or her or them surviving, then I direct that such issue shall take the share to which their parent would have been entitled if living."

Here is an intention, expressed as clearly as language could do it, to give the whole property to such grandchildren as should be living when his daughter Sarah Ann died, unless some of the grandchildren should have died before that time, leaving issue, in which case the issue should take the interest the parents would have taken if they had lived. This language is too plain to be disregarded or set aside by any technical rules of construction or fine-spun arguments founded upon decisions in other cases. It is not reasonable to suppose that the testator would so plainly express his design, and still mean by the other words in this clause of the will to entirely change the disposition so clearly indicated. He says: "I hereby give, devise, and bequeath the same to such seven grandchildren." By this language he clearly meant to give to such grandchildren the same interest he had already indicated so plainly. Expressed more clearly, the clause would have read: "I hereby give, devise, and bequeath such interest in the property to such seven grandchildren." The word "same," as used in the will, clearly means, not "such property," but "such interest in the property," as already indicated; and the interest so given to any grandchild was subject to be divested by the death of the grandchild before the death of Sarah Ann Kip, so that the surviving grandchildren would take it unless such deceased grandchild left issue, and in that event the issue would take such interest. Such a construction as this would give a reasonable effect to the whole of this clause of the will, and carry out the clear intention of the testator. The construction contended for by the appellant would render all the language in the clause directing the disposition of the property by the executors and trustees at the death of Sarah Ann Kip nugatory. It could never have been intended to express the intention of the testator so plainly as this clause does it as to the disposition of the property at the death of Sarah Ann Kip, and then render all this language nugatory, by inserting the words as to present gift. The present gift was not intended to be contradictory of such clearly expressed intention, but in harmony with it; and the construction we have given alone will accomplish such intention. We think no force

should be given to the word "heirs," in the fourth clause of the codicil. Evidently, the only purpose of the testator in making that codicil was to include his eighth grandchild, Sarah Ann French, in the disposition of the property covered by the twelfth clause of the will. He could have had no thought then of changing the clause in the will in other respects, or of giving any construction to any language in the will. The words "issue" and "descendants" were used interchangeably in the twelfth clause of the will; and the word "heirs," in the codicil, was evidently used as a synonymous term. It was not used in any technical sense, and no argument should be based upon the use of this word "heirs" to change the reasonable construction already given by us of the twelfth clause of the will.

We think the decision of the trial court was right, and that the judgment entered thereon should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

INGRAHAM, J. (dissenting). This action is brought to obtain a construction of the twelfth clause of the will of Adam W. Spies, deceased, and the question presented depends upon whether or not the estate given by that clause of the will to the testator's grandchildren vested upon the death of the testator, to be divested only upon the contingency of such grandchild dying before the determination of the life estate, leaving issue him or her surviving, or whether such remainder was subject to be divested by the death of the grandchild dying before the death of the person upon whose life the trust was limited, whether he or she left issue surviving or not.

The learned court below, by its first conclusion of law, held "that the remainder devised to the said eight grandchildren of the testator by his said last will and testament, and the codicils thereto, are vested remainders," and to that finding no exception was taken by either party so far as such remainder is held to be a vested remainder; but the learned trial court also found that such remainder "is subject to be divested by the death of the remainder-man prior to the death of the testator's daughter, the said Sarah Ann Kip, upon whose life the said trust estate is limited." It is quite clear that, by the express provisions of the will, the remainder vesting in any one of the eight grandchildren would be divested upon the death of such grandchild leaving issue. The testator has so expressly declared. The court below, however, held that by the will it was the testator's intention, although there is no express direction to that effect, that such estate so vested in one of his eight grandchildren should be divested upon the death of the grandchild without issue.

We have a will by which the testator creates a trust estate dependent upon the life of his daughter, with a remainder over, whereby he constitutes his grandchildren the owners of the remainder of the estate, the gift to them being a present gift,—"And I hereby give, devise, and bequeath the same to such seven grandchildren,"—with an express provision that such remainder so vested shall be divested in case any of his grandchildren die leaving issue. That this is the legal effect of the language used is clear. So far we have the

clearly expressed and consistent disposition of the property by the testator, but from the use of some words in a former part of the same clause the court has assumed that the testator had a different intention from that which the use of the words quoted would seem to imply, and the legal effect of this provision is defeated because the court has seen fit to imply from other parts of the will a different intention.

This will has once before been presented to the courts for construction, and a consideration of the opinions in that case is quite instructive in the determination of the questions that are now before us.    At the special term on the trial of that case (Cochrane v. Schell, 140 N. Y. 533, 35 N. E. 971) the court held that this was a vested remainder, subject to be divested upon the happening of the one contingency named in the will, viz. the death of one of the grandchildren leaving issue surviving.    Upon appeal to the general term of the supreme court (19 N. Y. Supp. 424), that court held that, as that contingency had not yet arisen, it was improper to determine it in advance of any necessity for such a determination, and therefore · modified the judgment by striking out the adjudication upon this question.    Upon the appeal to the court of appeals, that court held that whether or not the supreme court would determine such a question in advance of a necessity for its determination was a matter vesting in the judicial discretion of the court below, and with that the court of appeals would not interfere.    The court then determined the questions presented upon that appeal, viz. as to the validity of the trust created by the ninth clause of the will, holding it to be a valid trust.    Upon that appeal it appears from the opinion that all the counsel representing the various parties conceded that the estate vested, and that the grandchildren had a vested remainder, except that the executors simply stated that that question was not at present before the court.    It was held that any surplus income not necessary to pay the annuities directed to be paid by the will was "rents and profits" undisposed of by the will, and that, therefore, such rents and profits belonged to the grandchildren as the persons presumptively entitled to the next eventual estate, under section 40 of the statute of "Uses and Trusts" (1 Rev. St. p. 721).    The appellant in that case claimed that, the remainder being a vested remainder, this section would not apply, because the rents and profits were not undisposed of "in consequence of a valid limitation of an expectant estate."    The court held that while it was conceded by the parties before it that the remainder was vested, and not contingent, the appellant, to succeed, must at least be able to show that no contingency attended any of the limitations of the future estate which prevented the conveyance by persons in being of an absolute remainder in fee; that this could not be done, because upon the death of any grandchild during the trust term, leaving issue, such issue, whether born before or after the death of the testator, would take, by way of substitution and as purchasers, the share of the deceased parent, and that being so, and assuming that the grandchildren took vested remainders, it was a common case of a limitation to one person in remainder, with a gift over to another person on the death

of the first remainder-man, or the happening of any other event before the remainder vested in possession; that such was the situation in this case, and, "until the death of a grandchild during the term, it could not be ascertained in whom the remainder in the share of the one so dying would vest. Issue not yet in being may be born who will be entitled to take under the will." There is here no suggestion that, if the estate in remainder was vested in the grandchildren, it could be divested in any way except by the death of a grandchild leaving issue; and upon that appeal, as upon this, it seems to have been conceded that such a vested estate was created by the will. What was left undecided was whether or not the remainder vested at all. No doubt was expressed as to what contingency would divest such a remainder if it had vested. Thus, the trend of the opinions expressed on the prior litigation upon this will, so far as appears from the views of the judges who have examined it, was that, the remainder being vested, the only contingency upon which it would become divested was that of one of the grandchildren dying leaving issue surviving. A critical examination of the will itself, we think, clearly sustains this construction. A trust was created by the ninth clause of the will, which was to continue during the lifetime of the testator's daughter Sarah Ann, and the disposition of the estate after the death of his daughter was determined by the twelfth clause of his will. The language of the twelfth clause is as follows:

"At the death of my said daughter Sarah Ann, to close this trust, I direct that my executors and trustees convey and transfer all of my estate, both real and personal, then remaining in their hands, to such of my grandchildren as shall then be living (except my said granddaughter Sarah Ann French), viz. Arthur De Witt Cochrane, Cornelia Elizabeth Schell, Henry Spies Kip, Garret Berg Kip, William Rudolph Kip, and Florence Adele Kip, equally, share and share alike; and I hereby give, devise, and bequeath the same to such seven grandchildren, but if any of said seven grandchildren shall die previous to the decease of my daughter Sarah Ann, leaving issue him, her, or them surviving, then I direct that such issue shall take the share to which their parent would have been entitled hereunder (if living) under this clause of my will, said share to be received by said grandchildren or their descendants free from any control or claim of any husband that she or they may have at any time."

When we come to closely analyze this clause, its meaning seems to us to be quite clear. It commences with a direction to his executors as to what they are to do with the estate at the time of the death of his daughter upon whose life the trust estate was limited. That direction is that they are then to convey and transfer his estate, both real and personal, then remaining in their hands, to such of his grandchildren as shall then be living, except one grandchild named, the grandchildren being named who were to receive his bounty. This, standing alone, would not be considered as a present gift of any interest. It would be a mere direction to the executors to transfer or convey or pay at a future time. There are no words of gift, either present or future, vested or contingent, contained in the first paragraph of this clause of the will; and while, under such circumstances, the beneficiaries or those entitled to receive such payment or transfer would have a right to enforce such direction upon

the happening of the contingency, at the same time there is nothing in the language used indicating an intention of the testator that such children were to have any interest in the property until they obtained such an interest by his executors or trustees, following his directions to pay or transfer. Had the testator desired to limit the interest of these grandchildren to one by which they could enforce a direction of the testator to pay, transfer, or convey, he would have stopped with the paragraph as it has been quoted; or, if he had desired that the executors should pay the share of any child to the issue of such child where the child had died leaving issue, it would have been perfectly simple for him to add such a direction to the one directing his executors as to the disposition that they were to make of his estate upon the happening of that contingency. To this direction to the executors as to whom they should pay the shares of this estate upon the death of his daughter he, however, added the words which seem to me controlling as to what interest he intended that his grandchildren should take when the will became effectual to dispose of his property. As before stated, the first part of the clause was a direction to his executors. It in terms gave no estate to any one; but by it the executors or trustees were directed to do an act which, when they had performed that act, would have vested an estate in those to whom they were directed to convey or transfer. Then the testator comes to say what interest he wishes his grandchildren to have in this residuary estate, and how does he express it? He uses words which have been familiar in the making of wills since they were allowed by law, which have been given but one meaning, and which always imply the present passing of an interest or estate:

"And I hereby give, devise, and bequeath the same (that is, the share of his estate which his executors were directed to convey to his grandchildren upon his daughter's death) to such seven grandchildren."

He directs his executors to pay to those who shall be living at the time of his daughter's death a share of his estate, and then he says such share (that is, one-seventh of his residuary estate) he thereby gives, devises, and bequeaths to each of the seven grandchildren. It seems a little difficult, in view of this language, in view of the form used by the testator in which he has designated the estate that he wishes to go to the grandchildren at the time of his death, to say upon what any court can assume to ascertain an intention which directly contradicts the used words, and renders them useless and surplusage. If we are to enforce wills made by testators, and not make wills for them to suit our notion of what the testator should have thought or meant, it seems to me that we would be entirely unjustified in eliminating the only words used in this will which gives to any one an estate or interest in this residuary estate; for this will can be searched in vain for one other word by which the title to the residuary estate is disposed of, except the words I have quoted, and which the court below, by its judgment, has disregarded. But that the testator understood that by these words he gave to his grandchildren an estate in his lands, which vested at his death, if it needed any confirmation, is made, I think, certain by a consideration

of the fourth clause to the second codicil to his will. In considering the effect of this fourth clause, we must keep in mind that the will and this codicil took effect at the same time, and were a part of the same instrument, and that, by the publication of the codicil, there was a republication of the will in question. Now, by the will, he had excluded one grandchild from an interest in this devise or bequest of the remainder of the estate. He repented of such exclusion, and wished to make this child a participant of his bounty. The fourth clause of this codicil carried this into effect. He there said:

"I hereby direct that my said granddaughter Sarah Ann French shall be included in the division of my estate as mentioned in the twelfth clause of my said last will and testament, and shall share therein equally with my other seven grandchildren."

That is the expressed and declared intention as to the purpose for which he had inserted this fourth clause in the codicil; and to carry that intention out, viz. an intention to give to this excluded granddaughter the same interest in his residuary estate that he gave to his seven grandchildren by the twelfth clause of his will, what did he do? He said:

"I hereby direct that said twelfth clause of said will shall apply to her and her heirs as though she had been originally named therein."

Now, upon what principle can we say that, if the construction given to this will by the court below is correct, her heirs could have any interest in the property which this grandchild would take under the twelfth clause? Her issue might; but the testator, by using the word "issue" where he wished to divest the estate that had vested, and using a different word (a word of much broader meaning) when he wished to bestow upon this grandchild the estate subject to its being divested by the happening of the contingency, clearly indicates, I think, that he understood perfectly well that by this twelfth clause of the will, when this grandchild became included in it, she and her heirs took a vested remainder in the residuary clause, subject to be defeated by the happening of the contingency therein named, viz. her death, leaving issue, during the life of the person upon whose life the trust estate was limited.

Our attention was called upon the argument to many cases the principle of which it is claimed affect the construction to be given to this will. I have examined them all, but do not think that any advantage can be gained by a quotation from or a citation of any of them. The principles which have been laid down are so familiar that there is but little advantage in restating them. It seems to me clear that it was not the intention of the testator to give this residuary estate to a class, but that the bequest or devise was to the individuals named by him, and that, under the provisions of the Revised Statutes, these future estates vested on the death of the testator, there being "a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate." 1 Rev. St. p. 723, § 13. When, however, we come to determine upon what contingency this vested estate is to be divested, then it is conceded that the object of the court should be to ascertain and give effect to the intention of the testator. But, as always in such

cases, the first and important question presented is how such intention is to be ascertained. Where it is clearly expressed by the language used in the will, there is no difficulty. Where two clauses appear to be somewhat inconsistent, and capable of a different construction as to the testator's intention, a much greater responsibility is placed upon the court, for it has to determine which of the two expressed intentions was intended by the testator. It seems to me that in such a case effect should be given to the clause of the will which itself constitutes the provision which creates the estate; and when words, the meaning of which have become familiar to many generations of lawyers by repeated use, are used by a testator in creating the estate which he intends to vest in the beneficiaries, it does not seem to me that a court is justified in saying that the testator had a different intention than that conveyed by giving to such words their ordinary legal meaning, because of other expressions contained in the will not immediately connected with the creation of the estate in the property which passes under the will, and which might indicate a different view. When such a question is presented, it seems to me that what was said by Sir William Blackstone in his judgment in the case of Perrin and Blake, which is printed in Harg. Law Tracts, 495, should be clearly before the mind of every judge whose duty it is to pass upon such questions:

"For, as, on the one hand, it would be very unreasonable to control the plain intent of a testator by technical rules, which were principally contrived to ascertain it, so, on the other hand, where the intent is obscure or even doubtful, and liable to a variety of conjectures, it is the best and the safest way to adhere to those criterions, which the wisdom of the law has established for ages together, for the certainty and quiet of property. Every testator, when he uses the legal idiom, shall be supposed to use it in its legal meaning, unless he very plainly declares that he means to use it otherwise; and if the contrary doctrine should prevail, if courts, either of law or equity (in both of which the rules of interpretation must be always the same), if these or either of them should indulge an unlimited latitude of forming conjectures upon wills, instead of attending to their grammatical or legal construction, the consequence must be endless litigation. Every title to an estate that depends upon a will must be brought into Westminster Hall, for if once we depart from the established rule of interpretation, without a moral certainty that the meaning of the testator requires it, no interpretation can be safe until it has received the sanction of a court of justice."

We cannot say that this testator, when he used the words, "I hereby give, devise, and bequeath the same to such seven grandchildren," meant anything but what the words themselves implied, viz. that, when his will took effect, a remainder vested in these seven grandchildren, and that the subsequent paragraph of the clause in effect indicated upon what contingency he wished such vested remainder to be divested, viz. the death of a grandchild leaving issue him or her surviving. My conclusion, therefore, is that there vested in each of these eight grandchildren one-eighth of the residuary estate, subject to the life estate created by the ninth clause of the will; that such vested remainder was to be divested only in the event of the death of a grandchild leaving issue surviving; and that upon the death of the grandchild Florence A. Humbert, without leaving issue, her share in this estate passed to her personal representatives or heirs at law.

The judgment appealed from should be modified in accordance with these views, and, as modified, affirmed, with costs to all parties to be paid out of the estate.

RUMSEY, J., concurs.